**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**American Federation of State,**
**County and Municipal Employees,**
**Council 25, as an organization, and**
**representative of its members,**
**Catherine Phillips, and**
**Charles Williams**

Case#
Hon. Judge

**EXPIDITED CONSIDERATION**
**REQUESTED**

Plaintiffs,

V

**Terri Lynn Land,**
**Michigan Secretary of State,**
**and Christopher M. Thomas, Director of**
**Bureau of Elections, in their official capacities,**

Defendants.

_____/

**HERBERT A. SANDERS (P43031)**
**THE SANDERS LAW FIRM, P.C.**
Attorney for Plaintiffs
635 Beaubien
Detroit, MI 48226
Phone (313) 962-0099
Fax (313) 962-0044

Aina N. Watkins (P69196)
**Staff Attorney**
**Michigan AFSCME Council 25**
Attorney for Plaintiff  AFSCME
only
600 W. Lafayette, Ste. 500
Detroit, MI 48226
Phone (313) 964-1711 ext. 237
Fax (313) 964-0230

_____/

# PLAINTIFFS' EX PARTE MOTION
# FOR DECLARATORY JUDGMENT,
# PRELIMINARY INJUNCTION, PERMANENT INJUNCTION,
# AND EXPEDITED CONSIDERATION

**NOW COME** the Plaintiffs, by and through their attorneys, and for their Motion in accordance with *FRCP 56, 57, & 65* state as follows:

1. This action arises under *Voting Right Acts 42 U.S.C. § 1971, as amended,* and *42 USCS § 1973 as amended, the First, Fifth, Fourteenth and Fifteenth Amendments to the Constitution of the United States.*

2. It seeks a declaratory judgment that the Defendants' interpretation and application of its interpretation of *MCL 168.744* is in violation of *MCL 168.744, 42 U.S.C. § 1971, as amended, 42 U.S.C. § 1973 as amended,* the *First, Fifth, Fourteenth and Fifteenth Amendments;* and preliminary and permanent injunctions against the application and enforcement of Defendants' interpretation of the Act.

3. Jurisdiction is conferred on this Court *by Title 28 USCS §§ 1343(3) and (4), 2201 and 2202, and by U.S.C.  §§ 1971 (d) and 1973 (j)(f); and Title 42 USCS 1983.*

4. Private litigants may enforce their rights under *42 U.S.C. § 1971 and 42 USCS § 1973* by bringing a suit under *42 U.S.C. § 1983.*

5. *42 U.S.C. § 1983* authorizes suits for the deprivation of a right secured by the Constitution or the laws of United States caused by a person acting under the color of state law.

6. Plaintiffs requests expedited consideration of their Motion.

7. The November 4, 2008 election is less than 30 days away.

8. Without expedited consideration, Plaintiffs and other Michigan residents may suffer irreparable injury by having their right to vote abridged and/or denied.

9. Plaintiff AFSCME Council 25 is a labor union located within the State of Michigan, with over 65,000 members throughout the State of Michigan.

10. The majority of Plaintiff's members are qualified electors throughout the State of Michigan.

11. Many of Plaintiff's members are ethnic minorities, including, but not limited to African American, and Hispanic.

12. Plaintiff, AFSCME Council 25 members have obtained buttons and shirts evidencing support for various issues and candidates, some of which will appear on the November 4, 2008 ballot.

13. It is the intent of the members of Plaintiff, AFSCME Council 25 to wear the buttons and shirts, at the voting polls, while in line waiting to vote, and while voting.

14. Plaintiff Catherine Phillips is an African American, resident of Wayne County Michigan, registered voter, and member of AFSCME Council 25.

15. Plaintiff Charles Williams is an African American, resident of Wayne County Michigan, registered voter, and member of AFSCME Council 25.

16. Both Plaintiffs Phillips and Williams intend to wear buttons and shirts that will evidence their support of particular issues and/or candidates, at the voting polls, while in line waiting to vote, and while voting on November 4, 2008.

17. The wearing of buttons and shirts by the Plaintiffs is constitutionally protected speech, involving matters of public concern.

18. Defendant Terri Lynn Land (Land) is the duly elected Michigan Secretary of State.

19. Defendant Land is sued in her official capacity as Secretary of State of the State of Michigan.

20. Defendant Land's official residence is the Treasury Building, 1st Floor, 430 West Allegan, Lansing, MI 48918.

21. In her capacity as Secretary of State, Defendant Land is the chief election officer of the state and has supervisory control over local election officials.

22. In accordance with *MCL 168.31*, the Michigan Secretary of State is charged with election duties inclusive of but not limited to:

> *(a) Issue instructions and promulgate rules for the conduct of elections and registrations in accordance with the laws of this state.*

> *(b) Advise and direct local election officials as to the proper methods of conducting elections.*

> *(c) Publish and furnish for the use in each election precinct before each state primary and election a manual of instructions that includes specific instructions on assisting voters in casting their ballots, directions on the location of voting stations in polling places, procedures and forms for processing challenges, and procedures on prohibiting campaigning in the polling places.*

> *(d) Publish indexed pamphlet copies of the registration, primary, and election laws and furnish to the various county, city, township, and village clerks a sufficient number of copies for their own use and to enable them to include 1 copy with the election supplies furnished each precinct board of election inspectors under their respective jurisdictions.*

> *(e) Prescribe and require uniform forms, notices, and supplies the secretary of state considers advisable for use in the conduct of elections and registrations.*

> *(f) Establish a curriculum for comprehensive training and accreditation of all county, city, township, village, and school elections officials.*

> *(g) Establish and require attendance by all new appointed or elected election officials at an initial course of instruction within 6 months before the date of the election.*
>
> *(h) Establish a comprehensive training curriculum for all precinct inspectors.*

23. Defendant Christopher M. Thomas (Thomas) is the Director of the Bureau of Elections.

24. Defendant Thomas is sued in his official capacity as Director of Elections for the State of Michigan.

25. Defendant Thomas' official residence is the Treasury Building, 1st Floor, 430 West Allegan, Lansing, MI 48918.

26. Defendant Thomas is vested with the powers of the Secretary of State with respect to elections and is responsible for the supervision and administration of the election laws, under the supervision of the Secretary of State.

27. The Bureau of Elections is a subdivision of the Michigan Secretary of State office*.*

28. Specifically, concerning the Bureau of Elections, *MCL 168.32* states in part:

> *There is hereby continued in the office of the secretary of state the bureau of elections created by Act No. 65 of the Public Acts of 1951, under the supervision of a director of elections, to be appointed by the secretary of state under civil service regulations. The director of elections shall be vested with the powers and shall perform the duties of the secretary of state under his supervision, with respect to the supervision and administration of the election laws.*

29. The claims set forth in this Complaint are brought against both Land and Thomas (collectively referred to as Defendants) in their official capacities.

30. *MCL 168.744*, delineates the following prohibited acts concerning any election within the State of Michigan:

> (1) An election inspector or any other person in the polling room or in a compartment connected to the polling room or within 100 feet from any entrance to the building in which the polling place is located shall not persuade or endeavor to persuade a person to vote for or against any particular candidate or party ticket, or for or against any ballot question that is being voted on at the election. A person shall not place or distribute stickers, other than stickers provided by the election officials pursuant to law, in the polling room or in a compartment connected to the polling room or within 100 feet from any entrance to the building in which the polling place is located.

> (2) A person shall not solicit donations, gifts, contributions, purchase of tickets, or similar demands, or request or obtain signatures on petitions in the polling room or in a compartment connected to the polling room or within 100 feet from any entrance to the building in which the polling place is located.

> (3) On election day, a person shall not post, display, or distribute in a polling place, in any hallway used by voters to enter or exit a polling place, or within 100 feet of an entrance to a building in which a polling place is located any material that directly or indirectly makes reference to an election, a candidate, or a ballot question. This subsection does not apply to official material that is required by law to be posted, displayed, or distributed in a polling place on election day.

> (4) A person who violates this section is guilty of a misdemeanor.

31. Within the *Michigan Department of State, Bureau of Elections, Election Inspector Training Coordinator Accreditation Workshop Manual*, the Defendants give the following directions to Election Inspectors:

> *Election Inspectors have the right to ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name.*

*\*\*\**

> *If a person persists in violating any of the above restrictions, contact the clerk or, if necessary, local law enforcement authorities. See Exhibit 1.*

32. Based upon information and belief, Defendants have misinterpreted the prohibited acts as delineated in *MCL 168.744* to prohibit the wearing *of "campaign buttons, or clothing bearing a campaign slogan or a candidate's name".*

33. In that the Defendants give Election Inspectors the arbitrary "*right to ask voters [at their discretion] to remove campaign buttons or cover up clothing bearing a campaign slogan or candidate's name",* the possibility exist that such authority will be used in a arbitrary, discriminatory and/or inconsistent manner, resulting in an abridgement and/or denial of Plaintiffs AFSCME Council 25 members, Phillips, Williams, and others similarly situated of the right to vote.

34. The directive given by the Defendants to Election Inspectors violates the constitutional, civil and voting rights of Plaintiffs AFSCME Council 25 members, Phillips, Williams, and others similarly situated in that it intimidates, threatens or coerces persons for urging a person to vote, and intimidates, threatens or coerces persons for exercising powers and/or duties under the *Voting Right Acts as amended, and the First, Fifth, Fourteenth, and Fifteenth Amendments to the Constitution.*

35. The directive given by the Defendants to Election Inspectors violates the constitutional, civil and voting rights of Plaintiffs AFSCME Council 25, Phillips, Williams, and others similarly situated in that it gives Election Inspectors the *"right to [arbitrarily] ask voters entering the polls to remove campaign buttons or*

*cover up clothing bearing a campaign slogan or a candidate's name;"* and thus denies the Plaintiffs of the equal protection of the law.

36. The directive given by the Defendants to Election Inspectors violates the constitutional, civil and voting rights of Plaintiffs AFSCME Council 25, Phillips, Williams, and others similarly situated in that it directs Election Inspectors to request law enforcement assistance to enforce the deprivation of the constitutional, civil, and voting rights of the Plaintiffs.

37. Based upon information and belief, the directive given to Election Inspectors by the Defendants is as a result of the Defendants' misinterpretation and/or misapplication of *MCL 168.744.*

38. Under these facts, there is an actual controversy between the parties, and a multiplicity of litigation will be avoided if all of these issues are determined by this court at one time.

39. This court has jurisdiction to adjudicate the matters at issue and enter its judgment declaring the rights of all parties to this action.

40. It is necessary for this court to adjudicate and declare the rights of the parties to this action to guide Plaintiffs' future conduct and preserve their legal rights.

**WHEREFORE**, Plaintiffs pray that:

1. This Court declare that the Defendants' interpretation and application *of MCL 168.744* as delineated in Defendants' directive to Election Inspectors, as found in the *Michigan Department of State, Bureau of Elections, Election Inspector Training Coordinator Accreditation Workshop Manual* is in violation *MCL 168.744,* the *Voting Right Acts (Title 42 USCS § 1971 and 42 USCS §*

*1973), the First, Fifth, Fourteenth and Fifteenth Amendments to the Constitution of the United States* and therefore void.

2.  This Court issue preliminary and permanent injunctions enjoining Defendants, their agents, employees, successors and all persons in active concert and participation with them from enforcing, implementing or otherwise giving effect to the Defendants' directive to Election Inspectors that; "*Election Inspectors have the right to ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name. . . If a person persists in violating any of the above restrictions, contact the clerk or, if necessary, local law enforcement authorities*".

3.  That if the Court is not inclined to grant the requested relief on an ex parte preliminary basis, this Court immediately schedule this motion for hearing so that a permanent injunction may be obtained in accordance with the relief sought by the Plaintiffs.

4.  This Court grant Plaintiffs such other and further relief as to the Court may deem just and proper, together with cost and attorney fees.

Date: 10/15/08                                    Respectfully submitted,


                                                  /s/Herbert A. Sanders
                                                  The Sanders Law Firm, PC
                                                  Attorney for the Plaintiffs
                                                  635 Beaubien St
                                                  Detroit, MI 48226
                                                  (313) 962-0099
                                                  HASLAW@EARTHLINK.NET
                                                  P43031

/s/Aina N. Watkins
**AFSCME Council 25**
600 W Lafayette Blvd Ste 500
Detroit, MI  48226
(313) 964-1711
awatkins@miafscme.org
P69196

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**American Federation of State,**
**County and Municipal Employees,**
**Council 25, as an organization, and**
**representative of its members,**                     Case#
**Catherine Phillips, and**                            Hon. Judge
**Charles Williams**                                   **EXPIDITED CONSIDERATION**
                                                       **REQUESTED**

      Plaintiffs,

V

 **Terri Lynn Land,**
**Michigan Secretary of State,**
**and Christopher M. Thomas, Director of**
**Bureau of Elections, in their official capacities,**

      Defendants.

_____/

**HERBERT A. SANDERS (P43031)**            **Aina N. Watkins (P69196)**
**THE SANDERS LAW FIRM, P.C.**             **Staff Attorney**
Attorney for Plaintiffs                    **Michigan AFSCME Council 25**
635 Beaubien                               Attorney for Plaintiffs AFSCME,
Detroit, MI 48226                          Phillips and Williams only
Phone (313) 962-0099                       600 W. Lafayette, Ste. 500
Fax (313) 962-0044                         Detroit, MI 48226
                                           Phone (313) 964-1711 ext. 237
                                           Fax (313) 964-0230

_____/

# BRIEF IN SUPPORT OF PLAINTIFFS'
# EX PARTE MOTION FOR DECLARATORY JUDGMENT,
# PRELIMINARY INJUNCTION, PERMANENT INJUNCTION,
# AND EXPEDITED CONSIDERATION

## TABLE OF CONTENTS

Index of Authorities……………………………………………………………………..iii

Issues Presented………………………………………………………………………..2

Jurisdiction………………………………………………………………………………3

Facts………………………………………………………………………………….....4

Standing…………………………………………………………………………………..10

Standard of Review…………………………………………………………………………11

Argument……………………………………………………………………………………12

*A.* Defendants Violate MCL 168.744 By Directing Election Inspectors ……………12
That They Have The Right To Ask Voters Entering The Polls To Remove
Campaign Buttons Or Cover Up Clothing Bearing A Campaign Slogan Or
A Candidate's Name; And That If A Person Persists In Violating The
Directive, The Election Inspector Should Contact The Clerk Or If
Necessary, Local Law Enforcement Authorities.

*B.* Defendants Violate U.S.C. § 1971 And 42 U.S.C. § 1973 By Directing…………16
Election Inspectors That They Have The Right To Ask Voters Entering
The Polls To Remove Campaign Buttons Or Cover Up Clothing Bearing A
Campaign Slogan Or A Candidate's Name; And That If A Person Persists
In Violating The Directive, The Election Inspector Should Contact The
Clerk Or If Necessary, Local Law Enforcement Authorities.

*C.* Defendants Violate Plaintiffs Rights Under The Constitution By…………………21
Directing Election Inspectors That They Have The Right To Ask Voters
Entering The Polls To Remove Campaign Buttons Or Cover Up Clothing
Bearing A Campaign Slogan Or A Candidate's Name; And That If A
Person Persists In Violating The Directive, The Election Inspector Should
Contact The Clerk Or If Necessary, Local Law Enforcement Authorities.

1. Defendant's Interpretation of MCL 168.744 is……………………………..21
Unconstitutionally Overbroad.

2. The wearing campaign buttons, or clothing bearing a ……………………28
campaign slogan or a candidate's name is Symbolic Speech,
protected by the Constitution.

*D.* Plaintiffs' Are Entitled To Injunctive Relief Where They Have……………………29

i

A Likelihood Of Success On The Merits; They Will Likely Suffer Irreparable Harm If Defendants Continue To, Threaten And Coerces Persons For Exercising Their Voting Rights; The Balance Of The Hardships Weigh In Plaintiffs' Favor, And The Impact Of The Injunction Is In The Public Interest.

1.      Plaintiff's Have A Strong Likelihood of Success On The Merits of The Claim……..………30

2.      Absent An Injunction The Plaintiff Will Suffer Irreparable Harm………………30

3.      The Balance of Hardships Favors Issuance of an Injunction……………31

4.      The Public Interest Mandates a Grant of Injunctive Relief………………..31

Relief Requested…………………………………………………………………………32

# INDEX OF AUTHORITEIS

## Cases

*Adland v. Russ, 307 F.3d 471, 478 (6th Cir. Ky. 2002)*………………………………………10

*Allen v State Bd. of Elections (1969) 393 US 544*…………………………………………4,17
*22 L Ed 2d 1, 89 S Ct 817*

*Anderson v. Celebrezze, 460 U.S. 780, 788 n. 9, 103*………………………………………..22-25
*S.Ct. 1564, 75 L.Ed.2d 547 (1983))*.

*Anderson v. Spear, 356 F.3d 651, 661 (6th Cir. Ky. 2004)*……………………………24-27

*Brooks v Nacrell 473 F.2d 955 (3rd Cir. 1973)*………………………………………………3

*Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612,* ………………………………………………25
*46 L.Ed.2d 659 (1976),*

*Burson v. Freeman, 504 U.S. 191, 211 (U.S. 1992)*…………………………………………22-24

*Bush, 531 U.S. at 109*…………………………………………………………………………31

*DiBennedetto v. West Shore Hosp*…………………………………………………………12,15
*461 Mich 394, 402; 605 NW2d 300 (2000).*

*Draprop Corp. v. Ann Arbor, 247 Mich App 410, 415;* ……………………………………..12,15
*636 NW2d 787 (2001).*

*Gitlow v. New York, 268 U.S. 652, 666 (U.S. 1925)*…………………………………………21

*Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002)*…………………………………………..3

*Griffin, 570 F.2d at 1077-78*………………………………………………………………20

*Hadnott v. Amos 394 U.S. at 364,*…………………………………………………………20
*89 S.Ct. at 1104,22 L.Ed.2d at 341.*

*Harman v. Forssenius, 1965, 380 U.S. 528, 537,*…………………………………………19,31
*85 S.Ct. 1177, 1183, 14 L.Ed.2d 50.*

*Havens Realty Corp. v. Coleman,*………………………………………………….. 11
*455 US 363, 379 (1992).*

*In re MCI Telecom Complaint,* ………………………………………………………..12,14
*460 Mich 396, 411; 596 NW2d 164 (1999).*

*In Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*…………………………………………28
*393 U.S. 503, 505-506 (U.S. 1969)*

*Joint Anti-Fascist Committee v. McGrath,*……………………………………………..20
*341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 1951)*

*Lujan v. Defenders of Wildlife,* …………………………………………………………11
*504 U.S. 555, 560-561 (U.S. 1992).*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* …………………………11
*475 U.S. 574, 587 (1986).*

*Mich. Educ. Ass'n v. Sec'y of State,* ………………………………………………...15
*2008 Mich. App. LEXIS 1760 (Mich. Ct. App. Aug. 28, 2008).*

*Popma v. Auto Club Ins. Ass'n.,*……………………………………………………12,15
*446 Mich 460; 521 NW2d 831 (1994).*

*Reynolds v. Sims, 377 U.S. 533, 555, 84 S.Ct. 1362,* ………………………..24, 31
*12 L.Ed.2d 506 (1964));*

*Sandison v. Michigan High School Athletic Association., Inc.,* …………………..29
*64 F. 3d 1026, 1030 (6th Cir. 1995).*

*SBC Mich. v. PSC (In re Complaint of Rovas),* …………………………………….15
*482 Mich. 90 (Mich. 2008);*

*Schneider v. State of New Jersey, Town of Irvington,*………………………………24
*308 U.S. 147, 161, 60 S.Ct. 146, 84 L.Ed. 155 (1939).*

*Schwier v. Cox, 340 F.3d 1284, 1294-97 (11th Cir. 2003)*…………………………3

*South Carolina v. Katzenbach, 383 U.S. 301, 315 (1966)*…………………………...16

*Summit County Democratic Cent. & Exec. Comm. v. Blackwell,* ………………….29
*388 F.3d 547, 550 (6th Cir. Ohio 2004);*

*Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001)*……………………………….12

*Touchston v. McDermott, 234 F.3d 1133 (11th Cir. 2000)*……………………….31

*United States v Charleston County (2003, DC SC)* ……………………………….11
*316 F Supp 2d 268, affd (2004, CA4 SC) 365 F3d 341.*

iv

*United States v Wood 295 F.2d 77 (5th Cir. 1961)* ……………………………………21

*Yick Wo v. Hopkins,* ………………………………………………………………………19
*1886, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220, 226.*

**Statutes**

*42 U.S.C. § 1971*………………………………………………………………………2,3,18

*42 U.S.C. § 1973*………………………………………………………………….....2,3,19

*Act No. 65 of the Public Acts of 1951*……………………………………………………7

*Fed. R. Civ. P. 56(c)*………………………………………………………………11,19

*Fed. R. Civ. P. 65*……………………………………………………………………...29

*KRS § 117.235(3)*…………………………………………………………………23,25

*MCL 168.31*……………………………………………………………………….....6

*MCL 168.744*…………………………………………………2,3,7,8,11-15,18,22,26,27,30,32

*The Civil Rights Act of 1957, 42 U.S.C.A. § 1971(b)*…………………………………16

*Title 28 USCS §§ 1343(3) and (4), 2201 and 2202,* ………………………………..3

*Title 42 USCS 1983*………………………………………………………………..3

*U.S. Const., Amdt. 15, § 1*……………………………………………………...16

*Voting Rights Act of 1965 § 2 (42 USCS § 1973)* ……………………….…4,11,16,17

**Other:**

*Funk & Wagnalls New Comprehensive International* ……………………………………15
*Dictionary of the English Language (1971)*

*http://quickfacts.census.gov/qfd/states/26/26163.html*....................................17

*http://www.aclupa.org/legal/legaldocket/passiveelectioneering.htm*..............................27

# I.  ISSUES PRESENTED

1.  Whether Defendants violate *MCL 168.744* by directing Election Inspectors that they have the right to ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name; and that if a person persists in violating the directive, the Election Inspector should contact the clerk or, if necessary, local law enforcement authorities?

>   Plaintiffs Answers:   Yes.

>   Defendants Answer:  No.

2.  Whether Defendants violate Plaintiffs' rights under *42 U.S.C. § 1971* and *42 U.S.C. § 1973* by directing Election Inspectors that they have the right to ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name; and that if a person persists in violating the directive, the Election Inspector should contact the clerk or, if necessary, local law enforcement authorities?

>   Plaintiffs Answers:   Yes.

>   Defendants Answer:  No.

3.  Whether Defendants violate Plaintiffs' rights under the U.S. Constitution and its amendments by directing Election Inspectors that they have the right to ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name; and that if a person persists in violating the directive, the Election Inspector should contact the clerk or, if necessary, local law enforcement authorities?

>   Plaintiffs Answers:   Yes.

>   Defendants Answer:  No.

4.  Whether Plaintiffs are entitled to injunctive relief where they have a reasonable likelihood of success on the merits; they will likely suffer irreparable harm if Defendant continues to intimidate, threaten, and coerce persons for exercising their voting rights; the balance of the hardships weigh in Plaintiffs' favor; and the impact of the injunction is in the public interest?

>   Plaintiffs Answers:   Yes.

>   Defendants Answer:  No.

## II.  JURISDICTION

This action arises under *Voting Right Acts 42 U.S.C. § 1971, as amended,* and *42 USCS § 1973 as amended, the First, Fifth, Fourteenth and Fifteenth Amendments to the Constitution of the United States.*   It seeks a declaratory judgment that the Defendants' interpretation and application of its interpretation of *MCL 168.744* is in violation of *MCL 168.744, 42 U.S.C. § 1971, as amended, 42 U.S.C. § 1973 as amended,* the *First, Fifth, Fourteenth and Fifteenth Amendments;* and preliminary and permanent injunctions against the application and enforcement of Defendants' interpretation of the Act.

Jurisdiction is conferred on this Court *by Title 28 USCS §§ 1343(3) and (4), 2201 and 2202, and by U.S.C.  §§ 1971 (d) and 1973 (j)(f); and Title 42 USCS 1983.* Private litigants may enforce their rights under *42 U.S.C. § 1971 and 42 USCS § 1973* by bringing a suit under *42 U.S.C. § 1983. See Schwier v. Cox, 340 F.3d 1284, 1294-97 (11th Cir. 2003).   42 U.S.C. § 1983* authorizes suits for the deprivation of a right secured by the Constitution or the laws of United States caused by a person acting under the color of state law. When a statute confers an individual right, the right is presumptively enforceable by § 1983.  See *Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002); Brooks v Nacrell 473 F.2d 955 (3rd Cir. 1973)* in which the court held that a private cause of action lies for violation of *42 U.S.C. § 1971.*  Specifically, *§ 1971(d)* states*; "The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this section and shall exercise the same without regard to whether the party aggrieved shall have exhausted any administrative or other remedies that may be provided by law."*  Citizens are entitled to seek declaratory judgment when it is

3

alleged that a state has failed to comply with provisions of the *Voting Rights Act of 1965*. *Allen v State Bd. of Elections (1969) 393 US 544, 22 L Ed 2d 1, 89 S Ct 817.*

## II.  FACTS

1. Plaintiff AFSCME Council 25 is a labor union located within the State of Michigan, with over 90,000 members throughout the State of Michigan.

2. Members are employed by cities, states, counties, hospitals, the federal government and non-profit agencies, and other private employers.

3. The majority of Plaintiff's members are qualified electors throughout the State of Michigan.

4. Many of Plaintiff's members are ethnic minorities, including, but not limited to African American, and Hispanic.

5. AFSCME Council 25 engages in a mission inclusive of, but not limited to working for justice in the workplace, advocating for prosperity and opportunity for all of America's working families, fighting for fairness at the bargaining table, at the ballot box and in the halls of government.

6. Plaintiff, AFSCME Council 25 members have obtained buttons and shirts evidencing concern or support for various issues and expressing admiration for certain candidates that will appear on the November 4, 2008 ballot.  See Exhibit 4.

7. Based upon information and belief, it is the intent of the members of AFSCME Council 25 to wear the buttons and shirts, at the voting polls, while in line waiting to vote, and while voting.

8.  Members of AFSCME Council 25 believe the wearing of buttons and shirts by the AFSCME Council 25 members is constitutionally protected speech, involving matters of public concern.

9.  AFSCME Council 25 is headquartered in Lansing, MI and has a regional office located at 600 W. Lafayette, Suite 500, Detroit, MI 48226.

10. Plaintiff Catherine Phillips is an African American, resident of Wayne County Michigan, registered voter, and member of AFSCME Council 25. See Exhibit 5.

11. Plaintiff Charles Williams is an African American, resident of Wayne County Michigan, registered voter, and member of AFSCME Council 25. See Exhibit 6.

12. Both Plaintiffs Phillips and Williams intend to wear buttons and shirts that will evidence their support of particular issues and/or candidates, at the voting polls, while in line waiting to vote, and while voting on November 4, 2008.

13. The wearing of buttons and shirts by the Plaintiffs is constitutionally protected speech, involving matters of public concern.

14. Defendant Terri Lynn Land (Land) is the duly elected Michigan Secretary of State.

15. Defendant Land is sued in her official capacity as Secretary of State of the State of Michigan.

16. Defendant Land's official residence is the Treasury Building, 1st Floor, 430 West Allegan, Lansing, MI 48918.

17. In her capacity as Secretary of State, Defendant Land is the chief election officer of the state and has supervisory control over local election officials.

18. In accordance with *MCL 168.31*, the Michigan Secretary of State is charged with election duties inclusive of but not limited to:

> *(a) Issue instructions and promulgate rules for the conduct of elections and registrations in accordance with the laws of this state.*

> *(b) Advise and direct local election officials as to the proper methods of conducting elections.*

> *(c) Publish and furnish for the use in each election precinct before each state primary and election a manual of instructions that includes specific instructions on assisting voters in casting their ballots, directions on the location of voting stations in polling places, procedures and forms for processing challenges, and procedures on prohibiting campaigning in the polling places.*

> *(d) Publish indexed pamphlet copies of the registration, primary, and election laws and furnish to the various county, city, township, and village clerks a sufficient number of copies for their own use and to enable them to include 1 copy with the election supplies furnished each precinct board of election inspectors under their respective jurisdictions.*

> *(e) Prescribe and require uniform forms, notices, and supplies the secretary of state considers advisable for use in the conduct of elections and registrations.*

> *(f) Establish a curriculum for comprehensive training and accreditation of all county, city, township, village, and school elections officials.*

> *(g) Establish and require attendance by all new appointed or elected election officials at an initial course of instruction within 6 months before the date of the election.*

> *(h) Establish a comprehensive training curriculum for all precinct inspectors.*

19. Defendant Christopher M. Thomas (Thomas) is the Director of the Bureau of Elections.

20. Defendant Thomas is sued in his official capacity as Director of Elections for the State of Michigan.

21. Defendant Thomas' official residence is the Treasury Building, 1st Floor, 430 West Allegan, Lansing, MI 48918.

22. Defendant Thomas is vested with the powers of the Secretary of State with respect to elections and is responsible for the supervision and administration of the election laws, under the supervision of the Secretary of State.

23. The Bureau of Elections is a subdivision of the Michigan Secretary of State office.

24. Specifically, concerning the Bureau of Elections, *MCL 168.32* states in part:

> *There is hereby continued in the office of the secretary of state the bureau of elections created by Act No. 65 of the Public Acts of 1951, under the supervision of a director of elections, to be appointed by the secretary of state under civil service regulations. The director of elections shall be vested with the powers and shall perform the duties of the secretary of state under his supervision, with respect to the supervision and administration of the election laws.*

25. The claims set forth in this Complaint are brought against both Land and Thomas (collectively referred to as Defendants) in their official capacities.

26. *MCL 168.744*, delineates the following prohibited acts concerning any election within the State of Michigan:

> *(1) An election inspector or any other person in the polling room or in a compartment connected to the polling room or within 100 feet from any entrance to the building in which the polling place is located shall not persuade or endeavor to persuade a person to vote for or against any particular candidate or party ticket, or for or against any ballot question that is being voted on at the election. A person shall not place or distribute stickers, other than stickers provided by the election officials*

*pursuant to law, in the polling room or in a compartment connected to the polling room or within 100 feet from any entrance to the building in which the polling place is located.*

*(2) A person shall not solicit donations, gifts, contributions, purchase of tickets, or similar demands, or request or obtain signatures on petitions in the polling room or in a compartment connected to the polling room or within 100 feet from any entrance to the building in which the polling place is located.*

*(3) On election day, a person shall not post, display, or distribute in a polling place, in any hallway used by voters to enter or exit a polling place, or within 100 feet of an entrance to a building in which a polling place is located any material that directly or indirectly makes reference to an election, a candidate, or a ballot question. This subsection does not apply to official material that is required by law to be posted, displayed, or distributed in a polling place on election day.*

*(4) A person who violates this section is guilty of a misdemeanor.*

27. Within the *Michigan Department of State, Bureau of Elections, Election Inspector Training Coordinator Accreditation Workshop Manual*, the Defendants give the following directions to Election Inspectors:

> *Election Inspectors have the right to ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name.*
> ***
> *If a person persists in violating any of the above restrictions, contact the clerk or, if necessary, local law enforcement authorities.  See Exhibit 1.*

28. Based upon information and belief, Defendants have misinterpreted the prohibited acts as delineated in *MCL 168.744* to prohibit the wearing *of "campaign buttons, or clothing bearing a campaign slogan or a candidate's name".*

29. In that the Defendants give Election Inspectors the arbitrary "*right to ask voters [at their discretion] to remove campaign buttons or cover up clothing bearing a*

*campaign slogan or candidate's name",* the possibility exist that such authority will be used in a arbitrary, discriminatory and/or inconsistent manner, resulting in an abridgement and/or denial of Plaintiffs AFSCME Council 25, Phillips, Williams, and others similarly situated of the right to vote.

30. The directive given by the Defendants to Election Inspectors violates the constitutional, civil and voting rights of Plaintiffs AFSCME Council 25, Phillips, Williams, and others similarly situated in that it intimidates, threatens or coerces persons for urging a person to vote, and intimidates, threatens or coerces persons for exercising powers and/or duties under the *Voting Right Acts as amended, and the First, Fifth, Fourteenth, and Fifteenth Amendments to the Constitution.*

31. The directive given by the Defendants to Election Inspectors violates the constitutional, civil and voting rights of Plaintiffs AFSCME Council 25, Phillips, Williams, and others similarly situated in that it gives Election Inspectors the *"right to [arbitrarily] ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name;"* and thus denies the Plaintiffs the equal protection of the law.

32. The directive given by the Defendants to Election Inspectors violates the constitutional, civil and voting rights of Plaintiffs AFSCME Council 25, Phillips, Williams, and others similarly situated in that it directs Election Inspectors to request law enforcement assistance to enforce the deprivation of the constitutional, civil, and voting rights of the Plaintiffs.

33. Under these facts, there is an actual controversy between the parties, and a multiplicity of litigation will be avoided if all of these issues are determined by this court at one time.

34. This court has jurisdiction to adjudicate the matters at issue and enter its judgment declaring the rights of all parties to this action.

35. It is necessary for this court to adjudicate and declare the rights of the parties to this action to guide Plaintiffs' future conduct and preserve their legal rights.

36. Plaintiffs requests expedited consideration of their Motion.

37. The November 4, 2008 election is less than 30 days away.

38. Without expedited consideration, Plaintiffs and other Michigan residents may suffer irreparable injury by having their right to vote abridged and/or denied.

## III.  STANDING

An organization has standing to sue on behalf of its members when (a) its members otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit.  See *Adland v. Russ, 307 F.3d 471, 478 (6th Cir. Ky. 2002).*

Further, a labor union has standing to bring an action on behalf of its members, when as in the case at bar, the union can show:

> *First the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the*

> court." Third, it must be "likely," as opposed to merely
> "speculative," that the injury will be "redressed by a favorable
> decision."  See Lujan v. Defenders of Wildlife, 504 U.S. 555,
> 560-561 (U.S. 1992).

The injury in fact in the case at bar is the frustration of the union's mission. *Havens Realty Corp. v. Coleman, 455 US 363, 379 (1992)*. There is a casual connection between the injury and the conduct complained of, in that the Defendants' interpretation and application of their interpretation of *MCL 168.744* is in violation of *MCL 168.744,* the voting, and constitutional rights of the Plaintiffs. Plaintiff AFSCME Council 25 and its members will have their right to vote abridged and/or denied because they choose to wear certain buttons or clothing. Plaintiffs AFSCME Council 25, Phillips, and Williams have suffered and will continue to suffer the abridging or denial of the right to vote in the November 2008 election. Based upon the argument as delineated supra, it is likely, and not merely speculative, that the injury suffered by the Plaintiffs will be redressed by a favorable decision.   Private plaintiffs have standing to pursue their claims under *§ 2 (42 USCS § 1973) of Voting Rights Act of 1965* when they reside in an area directly affected by the allegedly illegal voting scheme. *United States v Charleston County (2003, DC SC) 316 F Supp 2d 268, affd (2004, CA4 SC) 365 F3d 341.*

## IV.  STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* In deciding a motion for summary judgment the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*

*475 U.S. 574, 587 (1986).* "[T]he party opposing the motion may not rely solely on the pleadings and must adduce more than a mere scintilla of evidence; if the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001).

The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *In re MCI Telecom Complaint, 460 Mich 396, 411; 596 NW2d 164 (1999).* This determination is accomplished by examining the plain language of the statute. *Id.* If the statutory language is unambiguous, courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required. *DiBennedetto v. West Shore Hosp., 461 Mich 394, 402; 605 NW2d 300 (2000).* Statutory language should be reasonably construed, keeping in mind the purpose of the statute. *Draprop Corp. v. Ann Arbor, 247 Mich App 410, 415; 636 NW2d 787 (2001).* When statutory terms are undefined, a courts may consider dictionary definitions to determine common usage. *Popma v. Auto Club Ins. Ass'n., 446 Mich 460; 521 NW2d 831 (1994).*

## V.  ARGUMENT

**A. DEFENANTS VIOLATE *MCL 168.744* BY DIRECTING ELECTION INSPECTORS THAT THEY HAVE THE RIGHT TO ASK VOTERS ENTERING THE POLLS TO REMOVE CAMPAIGN BUTTONS OR COVER UP CLOTHING BEARING A CAMPAIGN SLOGAN OR A CANDIDATE'S NAME; AND THAT IF A PERSON PERSISTS IN VIOLATING THE DIRECTIVE, THE ELECTION INSPECTOR SHOULD CONTACT THE CLERK OR IF NECESSARY, LOCAL LAW ENFORCEMENT AUTHORITIES.**

*MCL 168.744*, delineates the following prohibited acts concerning any election within the State of Michigan:

*(1) An election inspector or any other person in the polling room or in a compartment connected to the polling room or within 100 feet from any entrance to the building in which the polling place is located shall not persuade or endeavor to persuade a person to vote for or against any particular candidate or party ticket, or for or against any ballot question that is being voted on at the election. A person shall not place or distribute stickers, other than stickers provided by the election officials pursuant to law, in the polling room or in a compartment connected to the polling room or within 100 feet from any entrance to the building in which the polling place is located.*

*(2) A person shall not solicit donations, gifts, contributions, purchase of tickets, or similar demands, or request or obtain signatures on petitions in the polling room or in a compartment connected to the polling room or within 100 feet from any entrance to the building in which the polling place is located.*

*(3) On election day, a person shall not post, display, or distribute in a polling place, in any hallway used by voters to enter or exit a polling place, or within 100 feet of an entrance to a building in which a polling place is located any material that directly or indirectly makes reference to an election, a candidate, or a ballot question. This subsection does not apply to official material that is required by law to be posted, displayed, or distributed in a polling place on election day.*

*(4) A person who violates this section is guilty of a misdemeanor.*

Based upon information and belief, Defendants have misinterpreted the prohibited acts, as delineated in *MCL 168.744,* to prohibit the wearing *of "campaign buttons, or clothing bearing a campaign slogan or a candidate's name".*  Within the *Michigan Department of State, Bureau of Elections, Election Inspector Training Coordinator Accreditation Workshop Manual*, the Defendants give the following directions to Election Inspectors:

> *Election Inspectors have the right to ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name.*
> ***

13

> *If a person persists in violating any of the above restrictions, contact the clerk or, if necessary, local law enforcement authorities.  See Exhibit 1.*

The directions given to the Election Inspectors is in violation of *MCL 168.744* and breaches a duty owed to Plaintiffs to only prohibit *the "persuading or endeavoring to persuade"* a person to vote for or against a particular candidate or party ticket, or for or against a ballot question.   *MCL 168.744* does not prohibit the mere wearing of campaign buttons or clothing bearing a campaign slogan or a candidate's name.   In fact, no where within the statute are buttons or clothing mentioned.  The simple wearing of campaign buttons or clothing bearing a campaign slogan or a candidate's name does not constitute *"persuading or endeavoring to persuade"* a person to vote for or against a particular candidate or party ticket, or for or against a ballot question.

Defendants have misinterpreted *MCL 168.744* in that their directive conflicts with the plain meaning of the statute. Furthermore, the Michigan Supreme Court has held that **agency interpretations of statutes "are not binding on courts and cannot conflict with the plain meaning of [a] statute. While the agency's interpretation may be helpful in ascertaining the legislative intent, courts may not abdicate to administrative agencies the constitutional responsibility to construe statutes. Giving uncritical deference to an administrative agency would be such an improper abdication of duty."** *SBC Mich. v. PSC (In re Complaint of Rovas), 482 Mich. 90 (Mich. 2008); See also Mich. Educ. Ass'n v. Sec'y of State, 2008 Mich. App. LEXIS 1760 (Mich. Ct. App. Aug. 28, 2008).*

The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *In re MCI Telecom Complaint, 460 Mich 396, 411; 596 NW2d 164 (1999).* This determination is accomplished by examining the plain language of the statute. *Id.* If

the statutory language is unambiguous, courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required. *DiBennedetto v. West Shore Hosp., 461 Mich 394, 402; 605 NW2d 300 (2000)*. Statutory language should be reasonably construed, keeping in mind the purpose of the statute. *Draprop Corp. v. Ann Arbor, 247 Mich App 410, 415; 636 NW2d 787 (2001)*.   Concerning *MCL 168.744,* the first paragraph of the statute clearly expresses the statues intent.   The clear intent of the statute is to prevent the "*persuading or endeavoring to persuade*" a person to vote for or against any particular candidate or party ticket, or for or against any ballot question.   Clearly, the simple wearing of a button or a shirt does not constitute *"persuading or endeavoring to persuade".*

When statutory terms are undefined, a court may consider dictionary definitions to determine common usage. *Popma v. Auto Club Ins. Ass'n., 446 Mich 460; 521 NW2d 831 (1994).   Funk & Wagnalls New Comprehensive International Dictionary of the English Language (1971)* defines *persuade* as meaning "to move a person to do something by arguments, inducements, or pleas".   Additionally, *endeavor* is defined as meaning "earnest exertion for an end".   **Clearly, the simple wearing of a button or shirt is not what is intended to be prohibited by *MCL 168.744*.   Such acts do not constitute earnest exertion by arguments, inducements, or pleas, to move a person to do something or accomplish an end.**

15

**B. DEFENANTS VIOLATE *U.S.C. § 1971* and *42 U.S.C. § 1973* BY DIRECTING ELECTION INSPECTORS THAT THEY HAVE THE RIGHT TO ASK VOTERS ENTERING THE POLLS TO REMOVE CAMPAIGN BUTTONS OR COVER UP CLOTHING BEARING A CAMPAIGN SLOGAN OR A CANDIDATE'S NAME; AND THAT IF A PERSON PERSISTS IN VILATING THE DIRECTIVE, THE ELECTION INSPECTOR SHOULD CONTACT THE CLERK OR IF NECESSARY, LOCAL LAW ENFORCEMENT AUTHORITIES.**

The *Civil Rights Act of 1957, 42 U.S.C.A. § 1971*(b), provides:

> *No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce * * * any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose.*

*Section 1971* creates a cause of action in the United States for *"preventive relief"* where a person has intimidated or has attempted to intimidate another in the exercise of his right to vote[1].

Congress enacted the *Voting Rights Act of 1965* for the broad remedial purpose of "rid[ding] the country of racial discrimination in voting." *South Carolina v. Katzenbach, 383 U.S. 301, 315 (1966)*. The preamble to the *Voting Rights Act of 1965* establishes that the central purpose of the Act is *"[t]o enforce the fifteenth amendment to the Constitution of the United States." The Fifteenth Amendment* provides: *"The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S. Const., Amdt. 15, § 1.*  The Act should be interpreted in a manner that provides

---

[1]  The affirmative defense of adequate state remedies has been specifically removed by statute, for subsection (d) expressly states that the district court is to exercise jurisdiction without regard to whether the aggrieved party shall have exhausted other remedies provided by law.

"the broadest possible scope" in combating racial discrimination[2]. See *Allen* v. *State Board of Elections*, *393 U.S. 544, 567 (1969)*.

*Section 3 of the Voting Rights Act Amendments of 1982* provides:

> *Sec. 3(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2), as provided in subsection (b).*
>
> *(b) a violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.*

The terms "vote" and "voting" were defined elsewhere in the Act to include "*all action necessary to make a vote effective in any primary, special, or general election.*" *§ 14(c)(1) of the Act, 79 Stat. 445.*

In 1982, Congress amended § 2 of the Voting Rights Act to make clear that certain practices and procedures that result in the denial or abridgement of the right to vote are forbidden even though the absence of proof of discriminatory intent protects them from constitutional challenge. Under the amended statute, proof of intent is no longer required to prove a § 2 violation. Now plaintiffs can prevail under § 2 by demonstrating that a challenged election practice has resulted in the denial or

---

[2] Wayne County, Michigan ethnic population 41.8% Black, 0.4% American Indian, 2.4% Asian, 4.7% Hispanic, and 49.8% White
http://quickfacts.census.gov/qfd/states/26/26163.html

abridgement of the right to vote.  Congress not only incorporated the results test in the paragraph that formerly constituted the entire § 2, but also designated that paragraph as subsection (a) and added a new subsection (b) to make clear that an application of the results test requires an inquiry into *"the totality of the circumstances."*

In the case at bar, based upon information and belief, Defendants have misinterpreted the prohibited acts as delineated in *MCL 168.744* to prohibit the wearing of *"campaign buttons, or clothing bearing a campaign slogan or a candidate's name"*. Within the *Michigan Department of State, Bureau of Elections, Election Inspector Training Coordinator Accreditation Workshop Manual*, the Defendants give the following directions to Election Inspectors:

> *Election Inspectors have the right to ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name.*
> ***
> *If a person persists in violating any of the above restrictions, contact the clerk or, if necessary, local law enforcement authorities.  See Exhibit 1.*

Per the directive, Election Inspectors have the arbitrary "*right to ask voters [at their discretion] to remove campaign buttons or cover up clothing bearing a campaign slogan or candidate's name"*.  Clearly, the possibility exist that such broad authority will be used in a arbitrary, discriminatory and/or inconsistent manner, resulting in an abridgement and/or denial of Plaintiffs AFSCME Council 25 members, Phillips, Williams, and others similarly situated of the right to vote.  Additionally, the sworn testimony of Plaintiffs Phillips and Williams indicates that they feel intimidated, threatened and coerced by the directive given to the Election Inspectors.  Clearly, to suggest that law enforcement will be utilized to effectuate the Defendants arbitrarily instituted dress code on election day, is an act of intimidation in violation of *42 U.S.C. § 1971.*

The Court can take judicial notice of the fact that thousands of first time voters will participate in the November 4, 2008 election.  Many of those new voters, as well as the Plaintiffs will express their enthusiasm for participation in the election process by wearing buttons and shirts which evidence issues of concern, issues they support, and candidates they admire. They should not have their right to vote abridged or denied because of what they choose to wear to the polls on election day. The policy of the Defendants as delineate above constitutes the imposition of a *"qualification or prerequisite to voting, or standard, practice, or procedure in violation" of 42 U.S.C. § 1973*.

The right to vote on an equal basis with other citizens is a fundamental right in a free society; indeed, in any viable form of representative government. It is preservative of all governmental rights. *See Yick Wo v. Hopkins, 1886, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220, 226.* ***"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government."*** *See Harman v. Forssenius, 1965, 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50.*

There is no assurance that the directive given to the Election Inspectors will be applied equally throughout the State of Michigan.  Particularly inconsideration of the fact that the directive requires each Election Inspector to subjectively observe and judge every printed button or shirt worn to the polls to determine whether the button or shirt has a *"campaign"* message.  It is inevitable that such a daunting task will result in unfair,

biased, discriminatory results[3].    Unequal application of the same law to different individuals has an especially invidious connotation.  *Hadnott v. Amos 394 U.S. at 364, 89 S.Ct. at 1104,22 L.Ed.2d at 341.*  Any abridgement of the opportunity of members of a protected class to participate in the political process inevitably impairs their ability to influence the outcome of an election.

Though it is recognized that the administration of elections is generally a matter of state concern, federal courts have properly intervened when the attack was, broadly, upon the fairness of the official terms and procedures under which the election was conducted. The federal courts should not be asked to count and validate ballots and enter into the details of the administration of the election.  However, "*when confronted with an officially-sponsored election procedure which, in its basic aspect, is flawed, a federal judge need not be timid, but may and should do what common sense and justice require*".  *See Griffin, 570 F.2d at 1077-78 (quoting Joint Anti-Fascist Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 1951) (Frankfurter, J., concurring).*

In the case at bar, the "*totality of the circumstances*" suggest that the fundamental fairness of the November 4, 2008 election is in question.  As described above, an *"officially-sponsored election procedure in its basic aspect is flawed".*  Fundamental fairness demands that the Plaintiffs be granted the injunctive relief they

---

[3] The ambiguity of *MCL 168.744*, and the arbitrariness of its enforcement is bolstered by the Detroit City Clerk's Response to the Directive given Election Inspectors. The Clerk directed her staff that; *"Detroit Voters…will be asked to remove a button or shirt displaying materials that make reference to a candidate"*. See Exhibit 2.  Yet, in the news letter which the Clerk sent to Detroit voters concerning the upcoming election, she makes no mention of the statute, the interpretation of the statute requiring the removal of buttons, or covering shirts, or how it will be implemented and enforced on Election Day.

seek in order to protect their rights, and others similarly situated.  *In the case of United States v Wood 295 F.2d 77 (5th Cir. 1961), the Court stated:*

> *Whenever any person interferes with the right of any other person to vote or to vote as he may choose, he acts like a political termite to destroy a part of that foundation. A single termite or many termites may pass unnoticed, but each damages the foundation, and if that process is allowed to continue the whole structure may crumble and fall even before the occupants become aware of their peril. Eradication of political termites, or at least checking their activities, is necessary to prevent irreparable damage to our Government.*

**C.   DEFENANTS VIOLATE PLAINTIFFS RIGHTS UNDER THE CONSTITUTION BY DIRECTING ELECTION INSPECTORS THAT THEY HAVE THE RIGHT TO ASK VOTERS ENTERING THE POLLS TO REMOVE CAMPAIGN BUTTONS OR COVER UP CLOTHING BEARING A CAMPAIGN SLOGAN OR A CANDIDATE'S NAME; AND THAT IF A PERSON PERSISTS IN VIOLATING THE DIRECTIVE, THE ELECTION INSPECTOR SHOULD CONTACT THE CLERK OR IF NECESSARY, LOCAL LAW ENFORCEMENT AUTHORITIES.**

"[F]reedom of speech and of the press – which are protected by the *First Amendment* from abridgment by Congress -- are among the fundamental personal rights and "liberties" protected by the due process clauses of the *Fifth and Fourteenth Amendments* from impairment by the States." *Gitlow v New York, 268 U.S. 652, 666 (U.S. 1925).*

The *First, Fifth and Fourteenth Amendments* state that:

> *Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;* **or abridging the freedom of speech***, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*

> *USCS Const. Amend. 1*

> *No person shall be ….deprived of life, liberty, or property, without due process of law…*

USCS Const. Amend. 5

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States*; **nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.**

USCS Const. Amend. 14, § 1

### 1. Defendant's interpretation of *MCL 168.744* is unconstitutionally overbroad.

Defendants' restriction on the wearing of campaign buttons or clothing bearing a campaign slogan or a candidate's name will result in the suppression of free speech and abridge the right to cast a ballot. The Defendants' interpretation and application of *MCL 168.744* is overbroad and reaches both protected and unprotected expression. Defendant's interpretation creates a conflict between two fundamental rights, the exercise of free speech and the right to cast a ballot in an election free from intimidation and fraud.

In the case of *Burson v. Freeman*, 504 *U.S. 191, 211 (U.S. 1992),* the Supreme Court held that a 100 foot buffer-zone surrounding polling places was constitutional. *Burson* permitted states to create buffer zones for the "(1) the prevention of voter intimidation and (2) the prevention of corruption." However, "the *Burson* Court refused to provide a bright-line rule as to how far the State could *regulate speech around a poll.*" *Id. at 657.*

In the case of *Anderson v. Spear*, *356 F.3d 651, 661 (6th Cir. Ky. 2004)*, the court concluded that the 500 ft buffer zone surrounding polls in Kentucky was facially

overbroad using the "significant impingement test" set out in *Burson. Id.* The test applies a requirement of narrow tailoring "which gives deference to a state regulation so long as it is reasonable and does not "significantly impinge on constitutionally protected rights." Id.

In *Anderson,* the issue before the Court was whether Kentucky's restriction on electioneering within 500 feet of a polling place was unconstitutionally overbroad. The Kentucky legislature prohibited campaign activities near polling places on the date of an election:

> "No person shall, on the day of any election . . . do any electioneering at the polling place or within a distance of five hundred (500) feet of a county clerk's office or any entrance to a building in which a voting machine is located. . . ." KRS§ 117.235(3).

Appellant Anderson brought a two-pronged challenge to the statute, alleging first that the 500-foot buffer zone was generally overbroad in violation of the First Amendment, and second that the definition of electioneering was unconstitutionally overbroad because it included political speech that did not expressly advocate the election or defeat of candidates for public office.

The 6th Circuit Court in *Anderson* stated that *Burson* requires the application of exacting scrutiny to restrictions on political speech around polling places[4]. The Supreme Court adopted a modified "burden of proof" in cases in which exercise of a First Amendment right threatens to interfere with the act of voting itself. *Id. at 209 n. 11,* 112 S.Ct. 1846. Under this modified burden**, the state must demonstrate that its**

---

[4] *Burson, 504 U.S. at 198, 112 S.Ct. 1846* noting that to survive review, a statute must be necessary to serve a compelling state interest and narrowly drawn to achieve that end.

response is "reasonable and does not *significantly impinge* on constitutionally protected rights." *Id.* at 209, 112 S.Ct. 1846.

The 6th Circuit Court in *Anderson* stated that in applying this standard, the *Burson* Court recognized two compelling interests for buffer zones around polling places: 1) the state's duty to protect "the right to vote freely for the candidate of one's choice*," id. at 199, 112 S.Ct. 1846 (quoting Reynolds v. Sims, 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)*); and 2) the state's interest in preserving "the integrity and reliability of the electoral process itself," *id.* (quoting *Anderson v. Celebrezze, 460 U.S. 780, 788 n. 9, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)*). Put more succinctly, the Court recognized the states' interest in preventing voter intimidation and election fraud. *Burson, 504 U.S. at 206, 112 S.Ct. 1846.*

Applying the *Burson* "significant impingement" test, the 6th Circuit Court concluded that the 500-foot buffer zone was facially overbroad. The 6th Circuit Court stated:

> *It thus appears that Kentucky, to the extent possible, sought to eliminate all electioneering on election day. This Burson simply does not permit.. . .The Supreme Court has long recognized that "[m]ere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the [First Amendment] rights so vital to the maintenance of democratic institutions." Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147, 161, 60 S.Ct. 146, 84 L.Ed. 155 (1939).*

The 6th Circuit also addressed Appellant Anderson's claim that the 500-foot barrier's restriction on "electioneering" was overbroad, in that it captured more constitutionally protected speech than was necessary to promote the State's interest.

The 500-foot buffer zone prescribed by Kentucky law applies to "*electioneering*", which is defined to include:

> *the displaying of signs, the distribution of campaign literature, cards, or handbills, the soliciting of signatures to any petition, or the solicitation of votes for or against any candidate or question on the ballot in any manner, but shall not include exit polling. KRS § 117.235(3).*

Counsel for the Kentucky State Board of Elections informed Mr. Anderson that distributing instructions to voters on how to cast write-in votes "would be considered `electioneering' and, therefore would be subject to the restrictions of *KRS § 117.235*". Mr. Anderson challenged the buffer zone as overbroad based on the content proscribed by the definition of electioneering. Specifically, Anderson suggested that buffer zones should be applied only to "express advocacy," and not to "issue advocacy."

In the case of *Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)*, the Supreme Court defined "express advocacy", as words such as vote for, elect, support, cast your ballot for, Smith for Congress, vote against, defeat, and reject. *Id. at 83-84, 96 S.Ct. 612; see also Buckley, 424 U.S. at 44 & n. 52, 96 S.Ct. 612.* By offering a narrowing construction, the Supreme Court interpreted the statute so as to avoid sweeping in more protected speech than is necessary to prevent corruption.

The 6th Circuit Court stated concerning Kentucky's broad prohibition on "electioneering":

> *Kentucky's statute is vague, sweeping in, inter alia, "the displaying of signs, the distribution of campaign literature, cards, or handbills. . . ." KRS 117.235(3). While this language could be interpreted as limited to express advocacy,* **the Kentucky State Board of Elections has chosen a broader — indeed an overbroad — interpretation of the statute** *in finding that instructions on how to cast an absentee ballot constitute electioneering. Also*, **the record here is devoid of**

**evidence that such a broad definition is necessary to achieve the State's interest in preventing corruption**. . . Accordingly, because Kentucky's statute is vague and because the State has failed to provide any evidentiary support for regulating both express and issue advocacy, we find that this Court should apply a limiting construction. . . . **Prophylactic restriction which extends to issue advocacy— that is, protected speech which does not directly seek to elect or oppose specific candidates — cannot be maintained unless the state demonstrates that the limitation was necessary to prevent intimidation and election fraud.**. . . *It would also appear that individuals would be prohibited from displaying signs or distributing leaflets which fall into core issue advocacy: that is, promoting issues rather than specific candidates. If "electioneering" includes Mr. Anderson's instructing voters on how to cast a write-in vote, does it also include, for example, parents urging voters to "support our schools"?* ***All issue-related speech is chilled by the Board's interpretation of "electioneering." However, the State has failed to provide evidence to support a finding either that a regulation so broad is necessary to prevent corruption and voter intimidation, or that the regulation does not significantly impinge on the rights protected by the First Amendment.*** . *. . **Accordingly, because the statute is overbroad in that it prohibits speech . . . absent a narrowing construction it prohibits more speech than is necessary to meet the State's protected interest***. . . .

As in *Anderson*, the Michigan statute abridges speech protected by the First Amendment. The Michigan statute is overbroad in that it prohibits both "express advocacy" and "issue advocacy", as did the Kentucky statute. Defendants' interpretation of the Michigan statute effectively eliminates all types electioneering speech on Election Day, as did the defendants' interpretation of the Kentucky statue in the *Anderson* case. Defendants' interpretation of *MCL 168.744* is unreasonable and "significantly impinges on Plaintiff's constitutionally protected rights" of exercising free speech and the right to vote. The wearing of political paraphernalia is constitutionally protected symbolic speech.  By way of example it appears that the Michigan law would prohibit the wearing

of buttons or shirts that simply state: "It's Time For Change"; "End The War Now"; or "I Favor Pro-Choice".  Such speech could be interpreted as "*directly or indirectly mak[ing] reference to an election, a candidate, or a ballot question",* and thus a violation of Michigan law.  Such a broad sweeping restraint on free speech is clearly a violation of constitutionally protected rights.  Moreover, arbitrary, biased, and discriminatory interpretations by Election Inspectors is inevitable.

Furthermore, Plaintiffs' intent in the case at bar is not to taint the election nor commit fraud on November 4, 2008.  Defendants' interpretation of the statue in question will clearly prevent the exercise of free speech and abridge the rights of registered voters to cast their ballot.[5]  The simple wearing of a button or shirt does not constitute "express advocacy" or the "*endeavor[ing] to persuade a person to vote for or against any particular candidate."*  In order for an act to constitute "express advocacy" it must go beyond the mere displaying of a photo or a slogan on a button or a shirt; there must be earnest exertion by arguments, inducements, or pleas, to move a person to do something or accomplish an end. Clearly, the Defendants' interpretation of *MCL 168.744* is overbroad, and goes beyond protecting any legitimate interest the State may have in protecting voters.

---

[5] "In early September 2008, two Allegheny County elections officials sued Pennsylvania election officials claiming that an advisory to County Boards of Election issued in early September was "illegal." The lawsuit claims that allowing partisan messages on voters' clothing would "affect the health and safety of voters." http://www.aclupa.org/legal/legaldocket/passiveelectioneering.htm This lawsuit arose after the ACLU received complaints from voters who were deprived from voting in the April 2008 primary for wearing t-shirts endorsing candidates.

2. **The wearing of campaign buttons, or clothing bearing a campaign slogan or a candidate's name is Symbolic Speech, protected by the Constitution.**

The wearing of campaign buttons, or clothing bearing a campaign slogan or a candidate's name is a symbolic act. In *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, *393 U.S. 503, 505-506 (U.S. 1969)*, the Court held that "wearing of an armband for the purpose of expressing certain views is the type of symbolic act that is within the Free Speech Clause of the First Amendment". Further the Court reasoned that the wearing of armbands in the circumstances of this case was entirely divorced from actually or potentially disruptive conduct by those participating in it. It was closely akin to "pure speech" which, has been repeatedly held, entitled to comprehensive protection under the First Amendment. Id. In *Tinker*, students were expelled from school when they wore black armbands in silent protest of the Vietnam War.

Like the case at bar, wearing armbands and campaign paraphernalia are synonymous. Plaintiffs will be wearing paraphernalia expressing certain views symbolic of an act within the Free Speech Clause of the First Amendment. Plaintiffs like others similarly situated will not participate in disruptive conduct, intimidation or voter fraud while wearing buttons and shirts expressive of their feelings, admirations, and dislikes. Plaintiffs will silently cast votes with no intention of displaying disruptive conduct which would lead to intimidation or fraud. Therefore, the Defendant's have no need to ask Plaintiff's to remove buttons or shirts  when entering polling locations and casting votes. To follow this directive would be a violation of Plaintiffs freedom of (symbolic) speech.

**D. PLAINTIFFS' ARE ENTITLED TO INJUNCTIVE RELIEF WHERE THEY HAVE A LIKELIHOOD OF SUCCESS ON THE MERITS; THEY WILL LIKELY SUFFER IREPARABLE HARM IF DFENDANTS CONTINUE TO, THREATEN AND COERCES PERSONS FOR EXERCISING THEIR VOTING RIGHTS; THE BALANCE OF THE HARDSHIPS WEIGH IN PLAINTIFFS' FAVOR, AND THE IMPACT OF THE INJUNCTION IS IN THE PUBLIC INTEREST.**

Under the facts as delineated herein, there is an actual controversy between the parties, and a multiplicity of litigation will be avoided if all of these issues are determined by this court at one time. This court has jurisdiction to adjudicate the matters at issue and enter its judgment declaring the rights of all parties to this action. It is necessary for this court to adjudicate and declare the rights of the parties to this action to guide Plaintiffs' future conduct and preserve their legal rights. Plaintiffs have requested expedited consideration of this Motion, in that the November 4, 2008 election is less than 30 days away. Without expedited consideration, and the issuance of a temporary and ultimately permanent restraining order, Plaintiffs and other Michigan residents will suffer irreparable injury by having their right to vote abridged and/or denied.

The factors to be considered in determining whether to issue a temporary restraining order or a preliminary injunction under *FRCP 65* are:

> (1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction[6].

---

[6] See *Summit County Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. Ohio 2004); *Sandison v. Michigan High School Athletic Association., Inc.*, 64 F. 3d 1026, 1030 (6th Cir. 1995). The Court in *Sandison* emphasized that the four factors are not prerequisites that must be satisfied. These factors simply guide the discretion of the court; they are meant not to be rigid and unbending requirements.

**1.  Plaintiffs Have a Strong Likelihood of Success on the Merits of The Claims**

The directions given to the Election Inspectors is in violation of *MCL 168.744* and breaches a duty owed to Plaintiffs to only prohibit *the "persuading or endeavoring to persuade"* a person to vote for or against a particular candidate or party ticket, or for or against a ballot question.  Clearly, the simple wearing of a button or shirt is not what is intended to be prohibited by *MCL 168.744*.  Such acts do not constitute earnest exertion by arguments, inducements, or pleas, to move a person to do something or accomplish an end.

Because Election Inspectors have the arbitrary "*right to ask voters [at their discretion] to remove campaign buttons or cover up clothing bearing a campaign slogan or candidate's name,"* the possibility exist that such broad authority will be used in a arbitrary, discriminatory and/or inconsistent manner, resulting in an abridgement and/or denial of Plaintiffs AFSCME Council 25 members, Phillips, Williams, and others similarly situated of the right to vote.

**2.  Absent An Injunction the Plaintiffs Will Suffer Irreparable Harm.**

Plaintiffs will be immediately and irreparably harmed if the requested injunctive relief is not provided. The right to vote is a fundamental right of our society.  Because Election Inspectors have the arbitrary "*right to ask voters [at their discretion] to remove campaign buttons or cover up clothing bearing a campaign slogan or candidate's name,"* the possibility exist that such broad authority will be used in a arbitrary, discriminatory and/or inconsistent manner, resulting in an abridgement and/or denial of Plaintiffs AFSCME Council 25 members, Phillips, Williams, and others similarly situated of the right to vote.

*"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." See Harman v. Forssenius, 1965, 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50.* It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted." See *Reynolds v. Sims, 377 U.S. 533, 554-55 (1964).* The violation of a citizen's right to vote is the quintessential injury justifying an injunction. *See Touchston v. McDermott, 234 F.3d 1133 (11th Cir. 2000).*

### 3. The Balance of Hardships Favors Issuance of an Injunction

As discussed infra, the harm to Plaintiffs is substantial, if the requested relief is not granted. A number voters will be potentially disfranchised because of what they choose to wear to the voting polls on election day. On the other hand, equitable relief will not impose any significant costs on the Defendants, or cause the Defendants any significant harm.

### 4. The Public Interest Mandates a Grant of Injunctive Relief

The public interest demands that every qualified resident of Michigan be allowed to cast their vote free from intimidation, threat or coercion. Protecting an individual's right to vote is without question in the public interest, as is removing the undue burdens on that right imposed by the state[7]. Federal courts have properly intervened when as in the case at bar, the attack was broadly upon the fairness of the official terms and procedures under which an election is to be conducted.

---

[7] *Bush, 531 U.S. at 109* stating that the public interest is always served when citizens can look with confidence at an election process that insures that all votes cast by qualified voters are counted.

## VI.  RELIEF REQUESTED

**WHEREFORE**, Plaintiffs pray that:

5.  This Court issue an order declaring that the Defendants' interpretation and application *of MCL 168.744* as delineated in Defendants' directive to Election Inspectors, as found in the *Michigan Department of State, Bureau of Elections, Election Inspector Training Coordinator Accreditation Workshop Manual* is in violation *MCL 168.744,* the *Voting Right Acts (Title 42 USCS § 1971 and 42 USCS § 1973), the First, Fifth, Fourteenth and Fifteenth Amendments to the Constitution of the United States* and therefore void.

6.  This Court issue preliminary and permanent injunctions enjoining Defendants, their agents, employees, successors and all persons in active concert and participation with them from enforcing, implementing or otherwise giving effect to the Defendants' directive to Election Inspectors that; "*Election Inspectors have the right to ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name. . . If a person persists in violating any of the above restrictions, contact the clerk or, if necessary, local law enforcement authorities*".

7.  That if the Court is not inclined to grant the requested relief on an ex parte preliminary basis, this Court immediately schedule this motion for hearing so that a permanent injunction may be obtained in accordance with the relief sought by the Plaintiffs.

8.  This Court grant Plaintiffs such other and further relief as to the Court may deem just and proper, together with cost and attorney fees.

Date: 10/15/08                              Respectfully submitted,


/s/Herbert A. Sanders
The Sanders Law Firm, PC
Attorney for the Plaintiffs
635 Beaubien St
Detroit, MI 48226
(313) 962-0099
HASLAW@EARTHLINK.NET
P43031



/s/Aina N. Watkins
**AFSCME Council 25**
600 W Lafayette Blvd Ste 500
Detroit, MI  48226
(313) 964-1711
awatkins@miafscme.org
P69196

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**American Federation of State,**
**County and Municipal Employees,**
**Council 25, as an organization, and**
**representative of its members,**               Case#
**Catherine Phillips, and**                      Judge:
**Charles Williams**                             **EXPIDITED CONSIDERATION**
                                                 **REQUESTED**

       Plaintiffs,

V

 **Terri Lynn Land,**
**Michigan Secretary of State,**
**and Christopher M. Thomas, Director of**
**Bureau of Elections, in their official capacities,**

       Defendants.

_____/

**HERBERT A. SANDERS (P43031)**          **Aina N. Watkins (P69196)**
**THE SANDERS LAW FIRM, P.C.**           **Staff Attorney**
Attorney for Plaintiffs                  **Michigan AFSCME Council 25**
635 Beaubien                             Attorney for Plaintiff AFSCME
Detroit, MI 48226                        only
Phone (313) 962-0099                     600 W. Lafayette, Ste. 500
Fax (313) 962-0044                       Detroit, MI 48226
                                         Phone (313) 964-1711 ext. 237
                                         Fax (313) 964-0230

_____/

## CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of Plaintiffs' Ex Parte Motion For

Declaratory Judgment, Preliminary Injunction, Permanent Injunction, And Expedited

Consideration, and Brief in Support were electronically filed on October 15, 2008


Date: 10/15/08                    /s/_____
                                  Shamecki McCoy