UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
COUNCIL 25, as an organization and
representative of its members,
CATHERINE PHILLIPS, and
CHARLES WILLIAMS,

       Plaintiffs,

v.                                                    Case No. 08-14370
                                                    Honorable Patrick J. Duggan

TERRI LYNN LAND, Michigan Secretary
of State, and CHRISTOPHER M. THOMAS,
Director of Bureau of Elections,

       Defendants.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 28, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

**I.     Introduction**

Plaintiffs American Federation of State, County and Municipal Employees,

Council 25 ("AFSCME") and two of its members, Catherine Phillips and Charles

Williams, filed this lawsuit challenging Defendants' direction to Election Inspectors that

they "have the right to ask voters entering the polls to remove campaign buttons or cover

up clothing bearing a campaign slogan or a candidate's name." This directive, which is contained in the Michigan Department of State, Bureau of Elections, Election Inspector Training Coordinator Accreditation Workshop Manual, dated February 2008, is based on Defendants' interpretation of Michigan Compiled Law section 168.32. Plaintiffs seek a declaratory judgment that Defendants' directive violates state and federal law, specifically Michigan Compiled Law section 168.744, 42 U.S.C. §§ 1971 and 1973, and the First, Fifth, Fourteenth and Fifteenth Amendments to the United States Constitution. Plaintiffs also seek a preliminary and permanent injunction enjoining Defendants, their agents, employees, successors and all persons in active concert and participation with them from enforcing, implementing or otherwise giving effect to this directive.

With their Complaint, filed October 15, 2008, Plaintiffs also filed a motion for declaratory judgment, preliminary injunction, permanent injunction and expedited relief.[1] Defendants filed a response to the motion on October 24, 2008. The Court held a motion hearing on October 27, 2008.

## II. Background

AFSCME is a labor union located within the State of Michigan which has over 65,000 members.[2] (Compl. ¶ 6; Pls.' Mot. ¶ 9.) The majority of AFSCME's members,

---

[1] In light of the Court's decision on the motion, Plaintiffs' request for expedited consideration is granted.

[2] In the Complaint, AFSCME's membership is stated to be over 90,000. (Compl. ¶ 6.) The motion provides that there are over 65,000 members. (Pls.' Mot. ¶ 9.)

including Plaintiffs Catherine Phillips and Charles Williams, are qualified electors throughout the State. (Compl. ¶ 8.) Many of AFSCME's members are ethnic minorities, including Plaintiffs Phillips and Williams who are African American. (*Id*. ¶¶ 9, 12, 13.) Members have obtained buttons and shirts evidencing issues of concern, support for various issues, and admiration for various candidates relevant to the November 4, 2008 ballot. (*Id*. ¶ 10.) They intend to wear these buttons and shirts when they go to vote on November 4. (*Id*. ¶ 11.)

Defendant Terri Lynn Land ("Land") is the Michigan Secretary of State. (Compl. ¶ 16.) In this position, Land is the chief election officer for the State and has supervisory control over local election officials. (*Id*. ¶ 19; MICH. COMP. LAWS ANN. § 168.31.) Defendant Christopher M. Thomas ("Thomas") is the Director of the Bureau of Elections for the State of Michigan. (Compl. ¶ 21.) As Director of the Bureau of Elections, Thomas is vested with the powers of the Secretary of State with respect to elections and is responsible for the supervision and administration of the election laws under the Secretary of State's supervision. (*Id*. ¶ 24; MICH. COMP. LAWS ANN. § 168.32.) Plaintiffs are suing Defendants in their official capacities.

Michigan Compiled Law section 168.744 delineates certain prohibited acts with respect to elections within the State. The statute provides, *inter alia*:

> (3) On election day, a person shall not post, display, or distribute in a polling place, in any hallway used by voters to enter or exit a polling place, or within 100 feet of an entrance to a building in which a polling place is located any material that directly or indirectly makes reference to an election, a

3

> candidate, or a ballot question. This subsection does not apply to official material that is required by law to be posted, displayed, or distributed in a polling place on election day.

MICH. COMP. LAWS ANN. § 168.744(3). Pursuant to the statute, a violation of its provisions constitutes a misdemeanor. *Id*. § 168.744(4). To enforce this section, the Bureau of Elections provides the following instructions to Election Inspectors in its Elections Inspector Training Coordinator Accreditation Workshop Manual, dated February 2008:

> Election Inspectors have the right to ask voters *entering the polls* to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name. Voters may also be told to conceal campaign literature or materials brought into the polls.
> . . .
> If a person persists in violating any of the above restrictions, contact the clerk or, if necessary, local law enforcement authorities.

(Compl., Exs. 1 & 2 (emphasis added).)

### III. <u>Standard for Injunctive Relief</u>

To determine whether to grant Plaintiffs' request for injunctive relief, the Court must consider four factors: (1) Plaintiffs' likelihood of success on the merits; (2) whether Plaintiffs will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996)(citing *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995)). This Court must make specific findings concerning each of these factors, unless fewer

factors are dispositive of the issue. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997)(citing *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)). Because the Court concludes that Plaintiffs are not likely to succeed on the merits of their claims, it will address that factor only.

## IV. <u>Arguments and Analysis</u>[3]

### A. Michigan Compiled Law Section 168.744

---

[3]In response to Plaintiffs' motion, Defendants raise several procedural arguments: (1) that Plaintiffs' lack standing; (2) that the Court should decline to exercise jurisdiction over Plaintiffs' request for declaratory relief; (3) that laches bars Plaintiffs' lawsuit; and (4) that Plaintiffs' claims are not ripe for review.

As to Defendants' assertion that Plaintiffs lack standing, this Court disagrees at least with respect to the named AFSCME members. For example, Plaintiffs allege in their Complaint that AFSCME members (including the named members) intend to wear campaign buttons and/or clothing to the polls on November 4, that Defendants' directive will result in Election Inspectors barring them from entering the polling place while wearing campaign paraphernalia, and that they "will suffer" a violation of their voting rights as a result. (Compl. ¶¶ 14, 31, 47.) Plaintiffs, however, do not allege sufficient facts in their Complaint or motion to demonstrate that AFSCME has standing to bring suit on behalf of its members, as they fail to state how "'the interests at stake are germane to [AFSCME's] purpose.'" *See Northeast Ohio Coal. for the Homeless and Service Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1010 (6th Cir. 2006)(quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Sevs. (TOC), Inc.*, 528 U.S. 167, 181, 120 S. Ct. 693 (2000)).

The Court rejects Defendants' laches and ripeness claims. At the motion hearing, Plaintiffs' counsel explained that Plaintiffs only brought their lawsuit when they did because they only learned of the directive recently through the media. As Defendants already have issued a directive to Election Inspectors, granting them the right to ask individuals entering the polls to remove campaign paraphernalia before they may vote, the Court disagrees with Defendants' assertion that all of Plaintiffs' claims are "abstract disagreements" and therefore not ripe for review. If Plaintiffs wait until they are turned away from the polls to file their lawsuit, it may be too late to grant them any meaningful relief. Finally, having balanced the relevant factors, *see Grand Trunk W. RR Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), the Court finds that it is appropriate to address Plaintiffs' request for declaratory relief.

5

Plaintiffs first contend that Defendants' directive misinterprets and therefore violates Michigan Compiled Law section 168.744. In making this argument, Plaintiffs focus on subsection (1) of section 168.744, which prohibits anyone "in the polling room or in a compartment connected to the polling room or within 100 feet from any entrance [to a polling station]" from "persuad[ing] or endeavor[ing] to persuade a person to vote for or against any particular candidate or party ticket, or for or against any ballot question that is being voted on at the election." MICH. COMP. LAWS ANN. § 168.744(1). In fact, however, Defendants' directive follows subsection 3 of the statute which, as indicated earlier, prohibits "the post[ing], *display*[ing], or distribut[ion] of "any material that directly or indirectly makes reference to an election, a candidate, or a ballot question." *Id*. § 168.744(3). The broad language of this subsection reasonably can be interpreted to include the wearing of buttons and clothing bearing a campaign slogan or a candidate's name and Plaintiffs present no evidence to suggest that the Michigan Legislature had a different intent when it enacted the statute.[4]

### B. 42 U.S.C. §§ 1971 & 1973

Plaintiffs next argue that Defendants' directive violates 42 U.S.C. §§ 1971 and

---

[4] At the motion hearing, Plaintiffs' counsel argued that section 168.744 is unconstitutional if subsection (3) is not read in conjunction with subsection (1). In other words, counsel argued that prohibiting the display of any material that directly or indirectly makes reference to an election, a candidate, or a ballot question is unconstitutional if the material prohibited is not limited to that which is likely to "persuade or endeavor to persuade" another person. In their Complaint, however, Plaintiffs do not challenge the constitutionality of the statute itself; rather they only challenge Defendants' directive.

6

1973 in that, by granting Election Inspectors the arbitrary authority to ask voters to remove campaign buttons or cover up clothing, "the possibility exist [sic] that such broad authority will be used in a [sic] arbitrary, discriminatory and/or inconsistent manner, . . ." resulting in an abridgement and/or denial of Plaintiffs AFSCME Council 25 members [sic], . . . right to vote." (Compl. ¶ 31; Pls.' Br. in Supp. of Mot. at 19.) Plaintiffs further argue that "[i]t is inevitable that such a daunting task [observing and judging every button and shirt worn into the polls] will result in unfair, biased, discriminatory results." (Pls.' Br. in Supp. of Mot. at 19-20.)

Sections 1971 and 1973 provide that all citizens of the United States possess the right to vote "without distinction of race, color, or previous condition of servitude" and prohibit conduct that might interfere with that right. The directive of which Plaintiffs complain applies to all voters within Michigan and thus, on its face, does not interfere with voting rights based on race or color. Plaintiffs offer no evidence or logical argument to suggest that Election Inspectors likely will enforce the directive in a discriminatory manner.[5]

Section 1971 also prohibits anyone from intimidating, threatening, or coercing, or attempting to intimidate, threaten, or coerce any other person for the purpose of

---

[5]According to Defendants, the directive at issue is the same or is consistent with instructions in place since the mid-1970's. (Defs.' Resp. Br. at 1; Ex. 1 ¶¶ 5,6.) Accordingly, the Court expects that Plaintiffs would be able to present evidence that the directive results in the abridgement of the voting rights of a protected class, as they allege, if it in fact has such an impact.

7

interfering with that person's voting rights. 42 U.S.C. § 1971(b). To their motion, Plaintiffs attach the affidavit of Plaintiff Williams, who states that Defendants' directive "is intimidating and threatening, and I feel that it will be used to arbitrarily deny or abridge my right to vote because I am African American." (Pls.' Mot., Ex. 5 ¶ 5.) Plaintiffs also provide an affidavit from AFSCME's President, Albert Garrett, who states that he and other members feel that Defendants' directive "intimidates, threatens or coerces our members for urging a person to vote [sic], and/or intimidates, threatens or coerces our members for [sic] exercising powers granted them under federal law and the Constitution." (*Id.*, Ex. 4 ¶ 11.) Plaintiffs further argue that Defendants' directive is an act of intimidation in that it suggests "that law enforcement will be utilized to effectuate the Defendants [sic] arbitrarily instituted dress code on election day." (Pls.' Br. in Supp. of Mot. at 18.)

To prevail on a claim under § 1971(b), however, a plaintiff must prove two facts: (1) that there was an intimidation, threat or coercion, or an attempt to intimidate, threaten or coerce and (2) that the intimidation or attempt was for the purpose of interfering with the right to vote. *United States v. McLeod*, 385 F.2d 734, 740 (5th Cir. 1967); *see also United States v. Beaty*, 288 F.2d 653, 656 (6th Cir. 1961). Plaintiffs offer no evidence to suggest that Defendants issued the directive for the purpose of interfering with anyone's right to vote. To the contrary, Defendants inform the Court through the affidavit of Defendant Thomas that the purpose of the directive is to guarantee Michigan voters "a secure, orderly environment which is free of distractions when casting their ballots," "to

8

prevent campaigning from being brought into the actual room where voters are waiting to vote and voting," and to avoid "debate and contention in the polling place between voters standing in line who support opposing candidates." (Defs.' Resp. Br., Ex. 1 ¶ 5.)

### C. United States Constitution

Plaintiffs alleges that Defendants' directive violates AFSCME members' rights under the First, Fifth, Fourteenth, and Fifteenth Amendments to the United States Constitution.

Plaintiffs do not address the Fifth and Fifteenth Amendments specifically in their Complaint or motion. The Fifteenth Amendment states, in relevant part: "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S. CONST. Am. XV. Accordingly, a claim premised on the Fifteenth Amendment fails for the same reason that Plaintiffs' claim under 42 U.S.C. §§ 1971 and 1973 fails– i.e. that there is no evidence that the directive interferes with citizens' voting rights based on their race or color. Defendants' directive does not deprive Michigan citizens of their right to vote, it only limits what they may wear when they vote. Therefore, the directive does not violate the Fifth Amendment.[6]

With respect to the First Amendment, made applicable to the States by the Fourteenth Amendment, Plaintiffs argue that Defendants' directive interferes with

---

[6]As relevant, the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law; . . ." U.S. CONST. Am. V.

AFSCME members' free speech rights. Plaintiffs correctly assume that the wearing of political paraphernalia is speech protected by the First Amendment to the U.S. Constitution and that Defendants' directive is a content-based regulation as it only prohibits buttons and clothing with a political message. *See Burson*, 504 U.S. at 196-97, 112 S. Ct. 1850. What standard to apply in determining whether this content-based restriction is constitutional depends on whether the forum– that being the polling place– is a public or nonpublic forum.[7] As the Sixth Circuit has explained, ". . . the mere fact that a certain category of speech is worthy of constitutional protection does not mean that it is 'equally permissible in all places and at all times.'" *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 746 (2004) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800, 105 S. Ct. 3439 (1985)).

In *City of Sidney*, the Sixth Circuit described the different forums and the analysis to be applied to each for First Amendment purposes as follows:

> The [Supreme] Court has identified three types of forums: the tradition public forum, the designated public forum, and the nonpublic forum. . . . Traditional public forums are those places which by long tradition or by government fiat have been devoted to assembly and debate. . . . Government may also create a public forum by its designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects. In traditional and designated public forums, content-based restrictions on speech are

---

[7]As discussed *supra*, the directive only gives Election Inspectors "the right to ask voters *entering the polls* to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name."

> prohibited unless necessary to serve compelling state interests
> and narrowly tailored to achieve those interests. By contrast,
> restrictions on speech in nonpublic forums are permissible so
> long as they are viewpoint neutral and reasonable in light of
> the purpose served by the forum.

364 F.3d at 746 (internal citations and quotation marks omitted). Accordingly, a regulation affecting protected speech in a nonpublic forum need only be reasonable and viewpoint neutral to pass constitutional muster. *Id.* In comparison, "a content-based regulation of political speech in a public forum is valid only if it can survive strict scrutiny." *Burson*, 504 U.S. at 197 n.3, 112 S. Ct. at 1850 n.3 (citing *Carey v. Brown*, 447 U.S. 455, 461-62, 100 S. Ct. 2286, 2290-91 (1980)).

The parties assume that heightened scrutiny applies in this case, perhaps because Michigan Compiled Law section 168.744 prohibits certain activity within the polling place, *as well as* within 100 feet from any entrance to the building in which the polling place is located– the latter likely including public sidewalks and streets. MICH. COMP. LAWS ANN. § 168.744. The directive challenged in this lawsuit, however, only informs Election Inspectors that they "have the right to ask voters *entering the polls* to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name." The Supreme Court has not addressed whether a polling place is a traditional or designated public forum or a nonpublic forum.

In *Burson*, the Court applied strict scrutiny to evaluate a regulation that prohibited certain speech within the polling place *and* the area within 100 feet of the polling place. 504 U.S. at 193, 112 S. Ct. at 1848. But in determining whether the regulation limited

11

speech in a public or nonpublic forum, Justice Blackmun, writing for the plurality, focused on the area within 100 feet of the entrance to the polling place– i.e. the "campaign-free zone." Neither the plurality opinion nor the concurring or dissenting opinions classify the polling place itself.[8] The Sixth Circuit, however, has indicated that the polling place itself is a nonpublic forum. *City of Sidney*, 364 F.3d at 749.

As the Court explained in *City of Sidney*:

> There is no evidence in the record in this case that indicates that Ohio intended to open up nontraditional forums such as schools and privately-owned buildings for public discourse merely by utilizing portions of them as polling places on election day. . . .
>
> . . . By opening up portions of schools and private property for use as polling places on election day, Ohio has not opened up a nontraditional forum for public discourse. In fact, there is no evidence in the record of discourse of any sort. There is no evidence of expressive activity occurring anywhere on the properties involved, other than "each voter's communication of his own elective choice, and this has long been carried out privately– by secret ballot in a restricted space." *See Marlin v. District of Columbia Bd. of Elections & Ethics*, 236 F. 3d 716, 719 (D.C. Cir. 2001) (holding that the interiors of polling places are nonpublic forums).

*Id*. at 749-50. The Sixth Circuit explained further: "That some expressive activity occurred within the context of the forum created 'does not imply that the forum thereby

---

[8]Justice Scalia, concurring in *Burson*, held that the 100-foot zone around a polling place is not a public forum because such areas "have traditionally *not* been devoted to assembly and debate." 504 U.S. at 215-16, 112 S. Ct. 1859-60 (Scalia, J., concurring). Presumably, therefore, Justice Scalia also would conclude that a polling place is a nonpublic forum.

12

became a public forum for First Amendment purposes.'" *Id*. at 750 (quoting *Cornelius*, 473 U.S. at 805, 105 S. Ct. 3439). Accordingly, this Court concludes that prohibiting voters from wearing campaign paraphernalia into the polling place in order to cast their ballots does not run afoul of the First Amendment, so long as the prohibition is reasonable and viewpoint neutral. "The reasonableness of the government's restriction on access to a nonpublic forum must be assessed in light of the purpose of the forum and all of the surrounding circumstances." *Id*.

On its face, Defendants' directive is viewpoint neutral. Plaintiffs offer no evidence for the Court to conclude that Election Inspectors will ban only certain campaign buttons or clothing based on the viewpoint expressed on the material. As indicated *supra*, Defendants provide that the directive was issued in order to guarantee Michigan voters "a secure, orderly environment which is free of distractions when casting their ballots," "to prevent campaigning from being brought into the actual room where voters are waiting to vote and voting," and avoiding "debate and contention in the polling place between voters standing in line who support opposing candidates." (Defs.' Resp. Br., Ex. 1 ¶ 5.). Based on Defendants' assertions, the Court finds the directive reasonable in light of the purpose of the forum and the surrounding circumstances. *See Marlin v. District of Columbia Bd. of Elections and Ethics*, 236 F.3d 716, 720 (D.C. Cir. 2001) (upholding the board's enforcement of regulations prohibiting voters from wearing political paraphernalia into the polling place on election day where regulations enacted to protect "'the orderly conduct of elections' by 'creating a neutral zone within the polling place, preventing

13

altercations over hot-button issues, intimidation of voters, eleventh hour smear campaigns and the like'"); *see also Burson* (finding that the States have a compelling interest to protect "the right of citizens to vote freely for the candidates of their choice" and safeguarding "the right to vote in an election conducted with integrity and reliability"). Thus the Court holds that the challenged directive does not violate the First Amendment.

## V. Conclusion

For the above reasons, the Court holds that Defendants' directive that "Election Inspectors have the right to ask voters to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidates name" does not violate Michigan or federal law. Accordingly, the Court denies Plaintiffs' motion for a declaratory judgment and for injunctive relief.

**SO ORDERED**.

s/PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE